**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 24, 2017.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 15-52742-CAG |
| SUZANNA LEE GUILES, | § § § | |
| DEBTOR. | § § | CHAPTER 13 |
| | § § | |
| MARY VIEGELAHN, TRUSTEE, | § § | |
| PLAINTIFF, | § § | ADVERSARY NO. 16-05097-CAG |
| V. | § § § | |
| RANDOLPH BROOKS FEDERAL CREDIT UNION, | § § § § | |
| DEFENDANT. | § | |

**CORRECTED MEMORANDUM OPINION REGARDING TRUSTEE'S COMPLAINT
TO AVOID LIEN PURSUANT TO 11 U.S.C. § 544**

Before the Court is Plaintiff Trustee's Complaint to Avoid Lien Pursuant to 11 U.S.C. § 544 (the "Complaint") (ECF No. 1).[1] The Trustee seeks to avoid a lien held by Defendant Randolph Brooks Federal Credit Union ("RBFCU" or "Creditor"). The Trustee alleges that RBFCU's security interest in the Debtor's motor vehicle is unperfected and therefore avoidable. RBFCU argues that the Trustee should not be permitted to avoid the lien because the avoidance would harm the Debtor, and further asserts that the lien is perfected and cannot be avoided. This case proceeded to trial without any oral testimony. The parties provided briefing in support of their respective positions. The trial was in essence a summary judgment determination because none of the facts are in dispute.

The Trustee filed this adversary proceeding and provided Plaintiff's Brief in Support of Complaint to Avoid Lien Pursuant to 11 U.S.C. § 544 prior to the trial to consider the Complaint (ECF No. 16). The trial was held August 10, 2017, and the Court took the case under advisement. Shortly thereafter, RBFCU filed Defendant's Memorandum in Opposition (ECF No. 18). The Trustee followed with Plaintiff's Supplemental Brief and Response to Defendant's Memorandum (ECF No. 20).

After considering the briefing and arguments from counsel, the Court finds that, although the Trustee has standing to object to the claim and pursue an avoidance action, RBFCU's lien is perfected under the Texas Certificate of Title Act and the Texas Business and Commerce Code. Accordingly, the lien is not avoidable and judgment is granted to Defendant RBFCU.

---

[1] Unless otherwise noted, all references to "ECF" herein refer to documents filed in Adversary Proceeding 16-05097-cag.

The Court finds that it has subject matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) (determinations of the validity, extent, or priority of liens). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014.

## BACKGROUND

The Debtor possesses a 2007 Chevrolet Silverado (ECF No. 1). In July 2010, the Debtor took out a loan from RBFCU in the amount of $19,024.57 (the "First Note"), secured by the vehicle and payable over a fifty-four month period (ECF No. 1). RBFCU noted its security interest on the Certificate of Title (ECF No. 1) (Exhibit A). Almost four years later in May 2014, the Debtor took out a second loan from RBFCU, secured by the same collateral, for $14,525.00 (the "Second Note") (ECF No. 1). Both parties agree that a portion of the money from the Second Note was used to pay off the remaining balance of the First Note, and that there were additional funds left over for the Debtor (ECF Nos. 18 and 20). Both parties also agree that this was, apparently, not a refinance but simply a second issue of funds to the Debtor. (Trial Audio, 10:39:56, August 10, 2017). RBFCU did not change the lien date on the Certificate of Title (ECF No. 1) (Exhibit A). In November 2015, the Debtor filed for chapter 13 bankruptcy, and RBFCU filed its Proof of Claim (ECF No. 1) (Exhibit A).

The Trustee argues that when the First Note was paid off by funds from the Second Note, RBFCU's lien was extinguished and the Second Note created a new indebtedness (ECF No. 20). Therefore, in order to perfect its new security interest, RBFCU should have noted its new 2014 lien on the Certificate of Title (ECF No. 20). Functionally, the lien notation would have looked

3

precisely the same—the same collateral and the same creditor information—but for the listed date the lien came into effect. By leaving the 2010 date, the Trustee contends, RBFCU failed to perfect its security interest and therefore the lien may be avoided through 11 U.S.C. § 544 (ECF No. 20).

RBFCU's response is twofold: (1) that the Court may reject a properly brought avoidance action if a higher purpose would be served in restraining the Trustee's use of avoidance powers; and (2) that the Second Note was a future advance covered by a cross-collateralization clause in the security agreement, so the original lien continued and was never satisfied (ECF No. 18). Therefore, RBFCU maintains that there was never any new security interest to be perfected; the perfection in 2010 extends to the present and the notation on the title is sufficient (ECF No. 18).

## LEGAL ANALYSIS

The Court is not persuaded by RBFCU's argument that the Court should preclude the Trustee's avoidance action even if the transfer is statutorily avoidable. Section 103(a) of the Bankruptcy Code allows chapter 13 trustees to utilize § 544 avoidance powers, and, if a transfer is avoidable, a trustee is well within its rights to pursue an action to marshal those assets for the estate. ***In re Santoyo***, 540 B.R. 284, 289 (Bankr. S.D. Tex. 2015).[2] Accordingly, the Court finds that the Trustee in the instant case has standing to bring an avoidance action and attempt to avoid an allegedly unperfected lien.

Despite the Trustee's standing to object to RBFCU's claim and commence the avoidance action, the Court finds that RBFCU's security interest is perfected. The Court has examined case law within the Fifth Circuit as well as in sister circuits, as this appears to be a matter of first

---

[2] Unless otherwise noted, all statutory references are to 11 U.S.C., *et seq*.

4

impression in Texas federal courts. The Court finds that the Second Note functioned as a future advance and did not create a new security interest. The lien, therefore, is not avoidable.

### The Trustee Has Standing to Object to the Claim and Attempt to Avoid the Lien.

Section 544(a) of the Bankruptcy Code empowers trustees with the capability to avoid liens that are unperfected as of the date of the bankruptcy petition. 11 U.S.C. § 544(a). Section 103(a) applies chapter 5 in chapter 13 cases, thereby imbuing chapter 13 trustees with the § 544 powers. 11 U.S.C. § 103(a). Avoided transfers are preserved for the benefit of the estate. 11 U.S.C. § 551. Therefore, the Trustee has to capacity to challenge what she alleges is an unperfected lien.

RBFCU argues that the Court may limit the proper use of the Trustee's avoidance power if a "higher purpose" would be served by disallowing the avoidance action (ECF No. 18 at p. 2). RBFCU also contends that the Debtor's interests would be better served if the lien were not avoided, citing § 1302(b)(4) of the Code to indicate that trustees must assist debtors in plan performance. RBFCU maintains that, because avoiding the lien does not assist the Debtor, the Court should again restrain the Trustee in her avoidance action.

The Court finds no authority for the Creditor's proposed balancing test or its suggested result. It is uncontested that the avoidance of this lien would increase the dividend to the general unsecured creditors almost forty percent; this is a sufficient purpose served by the Trustee's action (ECF No. 20). Indeed, trustee avoidance powers exist precisely so that trustees might attempt to increase the assets of the bankruptcy estate. *Matter of Zedda*, 103 F.3d 1195, 1201 (5th Cir. 1997). If a transfer or obligation is found to be avoidable—the chief contention in the matter at hand— then the Code vests trustees with all-encompassing and full avoidance powers. *In re Salaymeh*, 361 B.R. 822, 832 (Bankr. S.D. Tex. 2007).

5

Additionally, the Trustee's ability to exercise her avoidance power does not hinge on the avoidance's effect on the Debtor. The Trustee's avoidance of a lien is not at odds with her § 1302(b)(4) duty to "advise . . . and assist the debtor in performance under the plan." *See Ferrell v. Countryman*, 398 B.R. 857, 867 (E.D. Tex. 2009) (explaining that chapter 13 trustees are not disinterested bystanders post-confirmation, but instead should advise the debtor about matters including payment reductions or suspensions, credit problems, collection efforts, and executory contracts). This duty does not mandate that a trustee refrain from the exercise of other powers; a trustee's primary duty is to maximize the value of the estate, not to serve as additional debtor's counsel. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985). The Code does not require that a trustee weigh every action against its potential impact on the debtor, to the possible detriment of the estate. Therefore, when avoiding a lien that is in the best interest of the estate, a trustee may pursue the avoidance. The Court finds that the Trustee has standing to object to the claim and to attempt to avoid the lien.

Despite the Trustee's ability to bring the action, she does not prevail in it, because the lien is perfected and therefore not avoidable.

**1. RBFCU Properly Perfected Its Security Interest in the Collateral.**

When RBFCU noted its lien on the vehicle's certificate of title in 2010, it perfected its security interest. The parties and the Court agree that the controlling statutes as to the perfection of security interests in motor vehicles are within the Texas Certificate of Title Act, found in Chapter 501 of the Texas Transportation Code. *See In re Stanton*, 254 B.R. 357, 361–62 (Bankr. E.D. Tex. 1991) (indicating that whether or not a security interest has been perfected is governed by state law). Regarding motor vehicles that, like the Debtor's, are not inventory, a creditor may

6

perfect a lien "only by recording the security interest on the title as provided by this chapter." Tex. Transp. Code Ann. § 501.111(a) (West 2012). The title must include the name and address of each lienholder and the date of each lien on the vehicle. Tex. Transp. Code Ann. § 501.021(a) (West 2012). The lienholder is entitled to retain the certificate of title until the debtor satisfies its obligation. Tex. Transp. Code Ann. § 501.027(b)(1) (West 2012); *In re Biggerstaff*, 02-50962-RLJ-7, 2004 WL 3209524, at *2 (Bankr. N.D. Tex. June 23, 2004).

RFBCU properly noted itself as the lienholder as of September 1, 2010, the date listed on the title. The Creditor's full name and address are noted on the lien. The validity and perfection of the First Note are not in question; RBFCU fully complied with the statute.

**2. RBFCU's Security Interest Remains Perfected.**

The issue then becomes whether or not the introduction of the Second Note, issued by the same Creditor to the same Debtor and secured by the same collateral, destroyed RBFCU's perfected security interest by essentially resetting the process and requiring the notation of a new lien. The Court finds that it did not.

**a. Texas Law Supports a Finding of Perfection.**

While there exist cases within Texas that address related questions and provide policy guidance, this appears to be a matter of first impression in courts within the Fifth Circuit.

**i. Statutory Standard**

A lien on a motor vehicle continues until it is satisfied and a new certificate of title is issued. *Commercial Credit Co. v. Am. Mfg. Co.*, 155 S.W.2d 834, 840 (Tex. Civ. App.—Fort Worth 1941, writ ref'd). Texas allows for security agreements to include future advance clauses where the collateral secures future advances or other value. Tex. Bus. & Com. Code Ann. § 9.204(c) (West

7

2001). These are also called "dragnet" clauses, particularly when the clause considers already-existing debt. *In re Trinity Meadows Raceway, Inc.*, 252 B.R. 660, 663 (Bankr. N.D. Tex. 2000). Future advance clauses are only recognized when they are reasonably within the contemplation of the parties. *Kimbell Foods, Inc. v. Republic Nat. Bank of Dallas*, 557 F.2d 491, 495 (5th Cir. 1977), *aff'd sub nom. United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979). The "reasonable contemplation" requirement is met when the security agreement between the parties clearly contains a future advance clause, not ambiguous and not as a result of mutual mistake, because courts look to the written contract language when determining intent. *In re Trinity Meadows Raceway*, 252 B.R. at 666. Once a future advance is recognized, its priority relates back to the date of the original security agreement. *Kimbell Foods*, 557 F.2d at 504. The lien is released when the lienholder returns the certificate of title to the debtor-owner and provides a release statement. Tex. Transp. Code Ann. § 501.115 (West 2012); *In re Biggerstaff*, 2004 WL 3209524, at *2.

    **ii. Fifth Circuit Precedent**

In the Fifth Circuit, the Court finds that the most relevant guidance may be found in *In re Conte*. *In re Conte*, 206 F.3d 536 (5th Cir. 2000). In *In re Conte*, a debtor took out a loan secured by his motor vehicle; the security agreement contained a future advance clause that indicated the collateral secured "any other loans you have with the credit union now or in the future and any other amounts you owe the credit union for any reason now or in the future." *Id.* at 537. The debtor later responded to a credit card advertisement from the creditor and requested a card; the same creditor issued him a MasterCard. *Id.*

8

The debtor eventually paid off the balance of his car loan and requested the creditor return the certificate of title; the creditor refused, because the debtor still owed an obligation on the credit card. *Id.* at 538. The debtor argued that his loan was satisfied and that the future advance clause should not extend to his credit card agreement. *Id.* The Fifth Circuit disagreed, applying Texas law and holding that the future advance clause in the security agreement extended the debtor's obligation through the repayment of the credit card debt as well. *Id.* at 539. Therefore, the lien remained. *Id.* The first loan being fully paid did not satisfy the obligation that the debtor still owed to the creditor, because the security agreement provided for the advance of future monies and the expansion of the obligation. *Id.*

### iii. Application

RBFCU cited the relevant provision in its security agreement during the hearing. (Trial Audio, 10:39:39, August 10, 2017). The provision reads:

> You are giving this Interest to secure repayment of your loan as well as any other amounts you now owe or will owe the Credit Union in the future. The collateral also secures your performance of all other obligations under your loan, this security agreement and any other agreement you have with the Credit Union.

(ECF No. 1) (Exhibit A at 6). The clause is markedly similar to the clause in *In re Conte*. The Trustee has not contested the existence of the future advance clause[3] or its validity, but instead

---

[3] The exhibit provided to the Court includes the second page of the security agreement for the Second Note; the second page contains the dragnet clause. Only the first page of the security agreement for the First Note was provided in the exhibit, so the exhibit does not include the page where the future advance clause is allegedly listed. A party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets, and the claimant will prevail unless the party who objects to the proof of claim provides evidence to rebut the claim. *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). The Plaintiff-Trustee did not raise any objection regarding the existence of the clause, and in fact argues from the premise that it is there (ECF No. 20). With no argument or indication from the Plaintiff-Trustee that the first security agreement failed to include the relevant clause, the Court will not *sua sponte* introduce doubt regarding its presence. That being said, the Court encourages creditors to use best practices by attaching all relevant pages to exhibits, as the future advance clause should be present in the initial agreement relating to the perfected interest.

9

contends that the Second Note is a new security interest rather than a future advance covered by the clause. The argument is premised on the allegation that the payment of the First Note "satisfied" the loan and therefore the lien must be released. *In re Conte* indicates that full payment of a loan does not satisfy the debtor's obligation if a future advance clause properly covers other existing loans. ***Id.***

The Trustee attempts to distinguish *In re Conte* by arguing that the debtor in that case incurred the credit card debt before the initial car loan was paid off, and therefore the facts are distinct from those at hand (ECF No. 20). The Court does not find a distinction. The Debtor in the instant case received the first loan, then received the second loan that was used to pay off the first loan, with funds outstanding for other use. Therefore, the Debtor incurred the second debt before paying off the initial car loan, precisely as the debtor in *In re Conte* did. ***Id.*** at 537.

This, then, leaves only the argument that the loan was satisfied when the First Note was paid off, and the remaining debt is unsecured; this point fails if there is reason to find the Second Note was a future advance. This Court so finds.

There are many compelling bases for treating the Second Note as a future advance: (1) the security agreements include unambiguous dragnet language; (2) the collateral is the same as in the First Note and was intended to collateralize both loans; (3) the same Creditor issued both Notes; (4) the Debtor receiving the funds is the same; (5) no gap in time existed between the issuance of the First Note and the issuance of the Second Note; and (6) the certificate of title was never released to the Debtor. The fact that the future advance was issued as a Second Note is immaterial. *See* ***In re CTS Truss, Inc.***, 7-85-00172-11, 1986 WL 79426, at *1 (W.D. Tex. Oct. 7, 1986) (finding that notes in addition to those given at the time of an initial security agreement are covered by the

agreement's future advance clause, which covered "future as well as existing" loans). The Court finds all of these factors relevant in its decision that the Second Note is properly classified as a future advance.

The Trustee finally maintains that the Second Note cannot be a future advance because it "advanced new monies after satisfaction of the [First] Note" (ECF No. 20 at p. 8). But RBFCU necessarily advanced the monies prior to the repayment, not after, as the funds from the Second Note gave the Debtor the capability to pay the First Note off. The timing of the debts incurred mirrors the timing in *In re Conte*. Additionally, the fact that more than the amount of the initial loan was extended is of no matter; such was also the case in *In re Conte*. See **In re Conte**, 206 F.3d at 537 (where the debtor incurred the credit card debt on top of the debt from the original loan). The uncontested clauses in the security agreements, along with the factual considerations of how and from whom the funds were issued, sufficiently establish the Second Note as a continuation of the initial obligation.

At no point was the Debtor relieved of her obligation to RBFCU. From the moment of the First Note to the issuance of the Second Note, the Debtor owed a debt to RBFCU. The day the Second Note was issued and used to pay off the remainder of the First Note and advance additional funds, the Debtor continued to owe an obligation to RBFCU. At every moment, the Debtor's obligation was secured by the same vehicle. Because RBFCU's security agreements indicate that the collateral secures present and future indebtedness, RBFCU's extension of additional monies to the Debtor did not create a new security interest, but rather sustained its existing interest. The dragnet clause is enforceable because it was reasonably within the contemplation of the parties.

### b. Sister Circuits' Case Law Supports a Finding of Perfection.

Because this is a matter of first impression in Texas, both parties cite persuasive cases from other jurisdictions. There are a few particularly useful cases from bankruptcy courts outside of Texas; the analysis under their own state laws provides a framework for other courts. The Court notes, however, that the existence of and variance in the certificate of title acts of different states will produce different results. Therefore, the weight given to the cited decisions fluctuates with the statutory similarities of their respective jurisdictions.

The few outside courts to consider similar facts under similar law reach conclusions consistent with this Court's decision. *See, e.g.*, **In re Dickey**, 214 B.R. 145, 147 (Bankr. W.D. Pa. 1997) (finding that, when a lien is initially noted on a title, the payment of one loan through later-issued funds from the lienholder does not extinguish the secured claim or require re-notation of the lienholder's interest on the title)[4]; **In re Spaziano**, 16 B.R. 799, 800 (Bankr. D.R.I. 1982) (finding that, when a security interest is properly perfected through notation of the lien on the title, a second loan between the same parties secured by identical collateral does not require re-notation of the lien).[5]

Comparable cases that resulted in unperfected security interests are factually distinct in crucial respects. *See, e.g.*, **In re Merrill**, 258 B.R. 750, 756 (Bankr. W.D. Mo. 2001) (finding that the lien was not perfected because Missouri state law requires that the lien notation itself indicate

---

[4] Pennsylvania state law requires that there be notice of an encumbrance on the certificate of title. 75 Pa. Stat. and Cons. Stat. § 1132.1(d). The creditor in *In re Dickey* properly noted its lien on the title after the first transaction but did not re-list it after the debtor paid off the loan with subsequently lent funds. *In re Dickey*, 214 B.R. at 146–47. The security interest continued with the obligation. *Id.*

[5] Rhode Island state law provides for more than one method of perfecting a security interest in a motor vehicle, but one option requires the notation of the lien on the certificate of title, as in Texas. 31 R.I. Gen. Laws § 31–3.1–19. The creditor in *In re Spaziano* perfected through lien notation. *In re Spaziano*, 16 B.R. at 799.

12

that the lien is subject to future advances)[6]; *In re Grizaffi*, 23 B.R. 137, 139 (Bankr. D. Colo. 1982) (finding no valid future advance where the creditor lacked evidence to show that the collateral was intended to serve as collateral for multiple loans, and where the creditor did not include dragnet language in the security agreement).[7] This Court finds that in states with perfection methods most similar to those in Texas law, and in cases with facts most similar to those in this case, the second loan is treated as a future advance and the lien remains perfected.

3. **Finding the Lien Continues Serves the Notice Goals of the Perfection Process.**

The final consideration—after examining the relevant statutes, Texas law, and law from other jurisdictions—is whether or not a ruling for RBFCU comports with the purposes behind Texas law's perfection process. The goals of the Texas certificate of title laws are to prevent: (1) the theft of motor vehicles; (2) the importing and trafficking of stolen motor vehicles; and (3) the sale of an encumbered motor vehicle without disclosure of the lien to the purchaser. Tex. Transp. Code Ann. § 501.003 (West 2012). Texas law avoids mandatory retitling when no purpose is served, even to the extent of not requiring retitling upon assignment of a lien. *In re Clark Contracting Services, Inc.*, 438 B.R. 913, 925 (W.D. Tex. 2010).

The world is put on notice of a lienholder's interest in a motor vehicle when the lienholder marks its lien on a certificate of title. *In re Biggerstaff*, 2004 WL 3209524, at *2–3. The world

---

[6] Under Missouri state law, both the security agreements and the lienholder's notation on the certificate of title must include the language "subject to future advances" in order for the lien to be perfected as to additional funds. Mo. Rev. Stat. § 301.600(5). The creditor in *In re Merrill* did not include such language in either location. *In re Merrill*, 258 B.R. at 753.

[7] The *In re Grizaffi* creditor's boilerplate security agreement included clauses with check boxes beside them. *In re Grizaffi*, 23 B.R. at 139. The creditor checked the box indicating that the debt was payable to the secured party; the creditor did not check the box next to the dragnet clause that would indicate the collateral would secure present or future indebtedness. *Id.* Colorado state law also requires that the amount of the lien be noted on the certificate of title, so the title's notation ceased to be accurate once the creditor alleged that the vehicle secured additional funds. *Id.* at 140; Colo. Rev. Stat. § 42-6-121(2)(a)(III).

13

was put on notice regarding RBFCU's lien when it properly perfected its security interest and indicated the encumbrance in 2010. The Court understands the Trustee's position to be that the only purpose served by changing the date on the title would have been to properly perfect a second security interest. As the Court finds that RBFCU's initial perfected security interest was never extinguished, there is no remaining purpose for requiring a creditor to retitle upon the issuance of a future advance in accordance with a dragnet clause.[8] The law does not require a useless act. *Dixie Glass Co. v. Pollak*, 341 S.W.2d 530, 541 (Tex. Civ. App.—Houston 1960, writ ref'd n.r.e.).

RBFCU properly perfected its security interest and put the world on notice. Because the Second Note operated as a future advance, the repayment of the First Note did not satisfy the indebtedness or demand release of the lien. The Trustee cannot avoid the lien.

## CONCLUSION

IT IS THEREFORE ORDERED that a judgment in favor of the Defendant is GRANTED.

All other relief not specifically granted herein is DENIED.

A judgment in favor of the Defendant will be entered separately.

### 

---

[8] This holding also serves the purposes of Article 9 more generally. *See* Alvin C. Harrell, *The PEB Study Group Report and Revised Article 9 with Respect to Certificate of Title Issues*, 51 Consumer Fin. L. Q. Rep. 367, 396 (1997) (stating that a secured party already perfected by noting its lien on a title should not be required to do anything more to "re-perfect" upon extending future advances or upon extending a new loan).